RECEIVED
IN ALEXANDRIA, LA
SEP 25 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JOHNNY L. HARRIS,<br>Appellant | CIVIL ACTION<br>NO. CV07-1717-A |
| VERSUS | |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY,<br>Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Johnny L. Harris ("Harris") filed an application for disability insurance benefits ("DIB") on November 17, 2004, alleging a disability onset date of October 9, 2004 (Tr. p. 64). That claim was denied by the Social Security Administration ("SSA") (Tr. p. 41).

A de novo hearing was held before an administrative law judge ("ALJ") on December 22, 2005, at which Harris appeared with a witness (Tr. p. 169). In March 2006, the ALJ issued a decision that was unfavorable to Harris (Tr. p. 34).

Harris then retained an attorney and, on a motion by Harris' attorney, the case was reopened and the initial decision was vacated (Tr. pp. 59-61, 188). A second hearing was held on December 12, 2006, at which Harris appeared with his attorney and a witness (Tr. p. 187). The ALJ found that, although Harris suffers from severe impairments of hypertension and chronic cervical and lumbar back pain (Tr. p. 13), he has the residual

functional capacity to perform light work except for only occasionally climbing, balancing, kneeling, crouching, crawling, and stooping (Tr. p. 14), and a finding of "not disabled" was directed by Medical-Vocational Guideline Rule 202.21 (Tr. p. 18). The ALJ concluded that Harris was not under a disability as defined by the Social Security Act at any time through the date of the ALJ's decision on June 22, 2007 (Tr. p. 18).

Harris requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 8) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Harris next filed this appeal for judicial review of the Commissioner's final decision, contending:

> 1. The ALJ erred in failing to give proper consideration to all of Harris' severe, medically-determined impairments.
>
> 2. The ALJ erred in assessing Harris' residual functional capacity, resulting in an improper reliance upon the Medical-Vocational Guidelines to find Harris is not disabled at Step 5.

Harris filed a brief in support of his appeal which the Commissioner *has not opposed*.[1] Therefore, Harris' unopposed claims are reviewed by the undersigned for merit.

## Eligibility for Benefits

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an

---

[1] The Commissioner's brief was due on March 26, 2008. Neither a brief nor a motion for extension of time has ever been filed.

application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly

detracts from its weight. <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

### Summary of Pertinent Facts

Harris was 42 years old at the time of his December 2006 administrative hearing (Tr. p. 190), had a ninth grade education, had earned a GED (Tr. p. 191), and had past relevant work as a stocker in a supermarket (1979-1982), a laborer (1982-1991), a lift operator (1994-1999), and a truck/tractor-trailer driver (1999-2004) (Tr. p. 78).

### 1. Medical Records

In October 2003, Dr. Kenneth L. Lim, a chiropractic physician,

4

treated Harris for problems with his right hip and leg (Tr. p. 97). Spinal x-rays indicated a cervical kyphosis with osteophytic spurs on the inferior bodies of C5 and C6, and an associated right cervical curvature, slight left thoracic curvature, and right lumbar curvature (Tr p. 97). Dr. Lim noted that Harris was working at that time (Tr. p. 97).

X-rays of Harris' cervical, thoracic, and lumbar spine in August 2004 showed mild spondylosis at C5-C7 and at L3-L5, and noted mild reversal of the cervical contour from C3-C6, right convexity apexing at L3, and left convexity apexing at T7, right at T5, and left at T3/4 with mild right convexity apexing at C1/C2 (Tr. p. 98).

In November 2003, Harris sought medical care for abdominal pain radiating to his right side and right foot pain, which improved when he walked around and worsened when driving (Tr. p. 123). X-rays of Harris' right hip and side were normal (Tr. p. 128), but x-rays of his abdomen showed gas patterns (Tr. p. 127), and he was diagnosed with abdominal pain (Tr. p. 125).

In August and September 2004, Harris received chiropractic treatment three times for his right side pain, which only mildly decreased his symptoms (Tr. pp. 129-134).

Harris went to the emergency room in October 2004 for complaints of right side pain (head to toe) for about two years (Tr. p. 99). Harris' blood pressure was 170/100, he was 6'1" tall, and he weighed about 200 pounds (Tr. p. 99). Harris left the ER before he was examined (Tr. p. 100).

Harris returned to the ER in November 2004 for right side pain radiating down his leg but not into his arm, which worsened when driving and sitting (Tr. p. 104). Harris stated he also had hypertension and a pinched nerve in his back, and that he was taking Atenolol, Celebrex, Lodine, and Methocarbanol (Tr. p. 104). Harris stated his pain was relieved by Celebrex, but that he was unable to have his prescription filled (Tr. p. 103). Harris was diagnosed with right sided pain (musculoskeletal) and his medications were continued, with the addition of Toradol (Tr. p. 102).

In December 2004, Harris was treated in the ER for right hip pain, which was diagnosed as cervical radiculopathy and treated with medications (Tr. p. 143). X-rays of Harris' lumbar spine, cervical spine, and pelvis were normal and showed well-maintained intervertebral disc spaces and unremarkable soft tissues (Tr. pp. 140-142).

In January 2005, Harris underwent a medical evaluation by Dr. Ratnam B. Nagalla,[2] a general practitioner (Tr. p. 136-137). Harris' physical examination was normal, and Dr. Nagalla noted Harris was muscular, had completely normal motor and sensory functions in both upper and lower extremities, he could bend and touch his toes, and could raise his legs straight up to 90 degrees (Tr. pp. 136-137). X-rays of Harris' right hip and foot were completely normal and no signs of arthritis were noted (Tr. p.

---

[2] Dr. Nagalla's first and last names are transposed on the medical report (Tr. p. 136).

6

137). Dr. Nagalla found Harris' gait was normal and he walked well, he had normal ranges of motion in both his upper and lower extremities, and his neck had normal rotation, flexion, and extension (Tr. p. 137). Dr. Nagalla concluded Harris is a normal, healthy male with controlled mild hypertension (Tr. p. 137).

In June 2005, Harris was treated at Louisiana State University Health Sciences Center in Shreveport, Louisiana ("LSUHSC-S"), for complaints of side pain (head, shoulder, hip, and leg), was diagnosed with muscle spasm/sprain, and was prescribed Ibuprofen and Flexeril (Tr. pp. 147-148).

In December 2005, Harris returned to LSUHSC-S for right-sided pain from his head to his feet (Tr. p. 145). Harris was diagnosed with cervical and right hip pain, and was prescribed Darvocet (Tr p. 146).

In February 2006, Harris had an MRI of his spine and cervical area (Tr. pp. 149, 166). The MRI revealed that Harris had two abnormal areas within the spinal cord at C5/6 and T8/9 which were most consistent with syrinx formations,[3] and mild straightening of

---

[3] Syrinx, or syringomyelia, is damage to the spinal cord due to the formation of a fluid-filled area within the cord. The fluid build-up seen in syringomyelia may be a result of spinal cord trauma, tumors of the spinal cord, or birth defects. The fluid-filled cavity usually begins in the neck area. It expands slowly, putting pressure on the spinal cord and slowly causing damage. Symptoms include gradual loss of muscle mass, headache, muscle function loss, numbness, pain down the arms, neck, or into the upper back, weakness in the arms or legs, muscle contractions, rashes, spasms in or tightness of the leg muscles, and uncoordinated movement. Untreated, the disorder gets worse very slowly, but it eventually causes severe disability. Surgical decompression usually stops the progression of the disorder, with about fifty percent of people showing significant improvement in neurologic function after surgical decompression.

the normal lordotic curve, small osteophyte formation, and minimal disc protrusion at L5/S1 with some narrowing of the right exiting neural foramina (Tr. pp. 149, 166). After another visit to LSUHSC-S in May 2006, a neurosurgical consult was planned (Tr. pp. 155-159).

Harris' was evaluated by a physician's assistant at the LSUHSC-S primary care clinic on May 2006, who noted the findings of syrinx at C5-C56 and T8-T9, and a small disc protrusion at L5-S1 (Tr. p. 155), as well as Harris' chronic lumbar and neck pain (Tr. p. 157). A visit to the neurosurgery clinic was scheduled (Tr. p. 158).

At the LSUHSC-S neurosurgery clinic, in November 2006, Harris again reported "constant burning pain" on his entire right side from his neck to his legs, excluding his right upper extremity (Tr. p. 153). Harris was evaluated by a nurse. The MRI results showing the syrinx at C5, the syrinx at T9, and the small herniated nucleus pulposus at L5-S1 were noted (Tr. p. 153). Harris's motor strength/bulk/tone were found to be grossly intact in both his upper and lower extremities, his reflexes were equal bilaterally on his upper and lower extremities, and his tandem gait was okay (Tr.

---

Without treatment, the condition will lead to continued or progressive loss of neurologic function and permanent disability. MEDLINEplus Health Information, Medical Encylopedia: "Syringomyelia," *available at* http://www.nlm.nih.gov/medlineplus/ency/article/001398.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health). See also, National Institute of Neurological Disorders and Stroke: "Syringomeylia Fact Sheet," *available at* http://www.ninds.nih.gov/disorders/syringomyelia/detail_syringomyelia.htm.

p. 153). A repeat MRI as well as an electromyography/nerve conduction velocity test were planned (Tr. p. 153-154).

An MRI done in February 2007 showed degenerative changes in Harris' cervical spine with straightening of the cervical curvature, posterior osteophytes at C3-C4, a syrinx formation at C5-C6 with local enlargement of the spinal cord; there were no changes from the prior MRI (Tr. pp. 163).

### 2. 2005 Administrative Hearing

Harris and a friend of his appeared before the ALJ in December 2005, without a representative, and testified (Tr. p. 171).

Harris testified he was 6'1" tall, weighed about 215 pounds, and lived alone (Tr. p. 173). Harris testified that he has no income (Tr. p. 173). Harris completed the ninth grade and had a GED (Tr. p. 174). Harris testified that he drives an automatic transmission truck (Tr. p. 174).

Harris testified that his last work was driving an 18-wheel truck; his job required him to travel overnight, but he did not have to keep a delivery log (Tr. p. 175). Prior to truck driving, Harris operated a forklift and worked as a laborer at a sawmill for about five years (Tr. pp. 175-176). Before that, Harris worked at a grocery store as a stocker (Tr. p. 176).

Harris testified that problems with his spine affect his ability to bend and stand, and prevent him from working (Tr. p. 176). Harris testified that he can stand comfortably for fifteen to twenty minutes, can lift up to twenty pounds, and can sit comfortably for thirty to forty minutes (Tr. p. 176). Any activity

9

which requires bending, walking, or running makes his back pain worse (Tr. pp. 176-177). Harris testified that his back pain radiates down his right leg to his foot, and that the pain is always there (Tr. p. 177). Harris testified that he was not seeing a doctor regularly for his back problem (Tr. p. 176), but he usually went to LSU in Shreveport for medical care (Tr. p. 179). Harris testified that, although he can drive, he usually has someone drive him to Shreveport because of the pain in his leg (Tr. pp. 180-181). Harris testified that he also has hypertension, for which he takes medicine (Tr. p. 182).

Harris testified that he smokes three to four cigarettes a day, drinks one or two beers on the weekends, and has never had a "problem" with drinking and driving (Tr. p. 178). Harris testified that he quit driving because he could not sit down without the pain bothering him (Tr. p. 178), and he has not worked in over a year (Tr. p. 179).

Harris testified that, on a typical day, he lies down or sits around the house, watches TV for about three hours, takes a short walk, grocery shops and carries a light bag, and sometimes cooks, but he does not do yard work or laundry (Tr. p. 179). Harris testified that people visit him at home (Tr. p. 182).

Debra Powell, Harris' girlfriend, also testified. Powell testified that she lives in Alabama, drives a truck, and sees Harris two or three times a week (Tr. p. 183). Powell testified that Harris cannot sit or stand too long due to pain, and has difficulty sleeping at night and moves around a lot due to pain

(Tr. p. 184). Powell testified that Harris sometimes gets up at night due to pain (Tr. p. 184).

### 3. 2006 Administrative Hearing

At his December 2006 administrative hearing, Harris appeared with his attorney and a witness (Tr. p. 187).

Harris testified that he was 42 years old, left handed, 6'1" tall, weighed about 198 pounds, and had lost seventeen pounds in the last year (Tr. p. 191). Harris testified that he lives with his girlfriend, who works, and that he has no income (Tr. p. 191). Harris testified that he drives an automatic transmission pickup truck (Tr. p. 191). Harris completed the ninth grade and earned a GED (Tr. p. 191). Harris testified that he used to drive an eighteen wheel truck locally, hauling chips in the logging industry, and has also worked as a forklift operator at a lumber yard and worked in a supermarket as a stocker (Tr. pp. 192-193). Harris testified that, when he drove a truck, he was paid by the load and brought home $300 to $700 per week (usually $500 to $600) (Tr. p. 199).

Harris testified that he cannot work because of pain in his neck, back, shoulder, right leg, and right foot, and because he cannot bend (Tr. p. 193). Harris testified that he saw a neurosurgeon in Shreveport a couple of months before the hearing, who told him there is something wrong with his neck and he may need surgery (Tr. pp. 193-194).

Harris testified that he is in constant pain in his right foot, right leg, hips, back, and neck (Tr. p. 194), and walking

does not lessen the pain (Tr. p. 194). Harris testified that he has constant pain which runs from the right side of his head to his neck and shoulders, down the right side of his back, and down his right hip, right leg, and right foot (Tr. pp. 197-198). Harris testified that he does not have pain in his arms and hands (Tr. p. 198). Harris testified that he started having this pain in about 2000 or 2002 (Tr. p. 198), and quit working as a truck driver in 2004 due to pain (Tr. p. 199). Harris testified he use to take pain medicine, but he cannot afford to buy it anymore (Tr. p. 194).

Harris testified that he can comfortably lift about twenty pounds (Tr. p. 195). Harris testified that he cannot work at a job where he can sit or stand at his option because he is always in pain (Tr. pp. 195, 198). Harris also has hypertension, for which he takes medication (Tr. p. 197).

Harris testified that, on a typical day, he lies down and watches TV a lot and he takes thirty minute walks (Tr. p. 194); his girlfriend prepares his meals and does the housework (Tr. p. 199). Harris testified that he has two children whom he does not see very often, and that he gets along well with his girlfriend (Tr. p. 196). Harris testified that he smokes about half a pack of cigarettes a day, drinks about two beers a week, and has never had a drinking problem (Tr. p. 195). Harris testified he used to have hobbies and do things that he is unable to do any more (Tr. p. 195). Harris drives himself places when he needs to (Tr. p. 196). Harris testified that he would like to go back to truck driving someday, and that he got along well with his supervisors and other

truck drivers (Tr. pp. 196-197).

Debra Powell, Harris' girlfriend, testified that she has been living with Harris in Winfield, Louisiana, for about two years (Tr. p. 200). Powell testified that Harris is constantly in pain, he cannot sit or lie down for very long, and he moves a lot when he is lying down (Tr. p. 201). Powell testified that Harris sleeps for a few hours at night, then starts grunting a lot and sits up or gets up and walks (Tr. p. 202). Powell testified that Harris' moves a lot when he is in bed, which keeps her awake (Tr. p. 202). Powell testified that Harris' pain is getting worse (Tr. p. 201); when Harris takes Lortab for pain, it relieves his pain for three or four hours (Tr. p. 203). Powell testified that she and Harris get along alright, but that sometimes the pain makes Harris frustrated and argumentative (Tr. p. 201). Powell testified that Harris drives to the store to do light grocery shopping and sometimes runs errands for Powell (Tr. pp. 201-202).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Harris (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential

process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Harris has not engaged in substantial gainful activity since October 9, 2004, and that he has a severe impairment of "hypertension and chronic cervical and lumbar back pain," but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 13). The ALJ also found that Harris is unable to perform any of his past relevant work (Tr. p. 17).

At Step No. 5 of the sequential process, the ALJ found that Harris has the residual functional capacity to perform the full range of light work (Tr. p. 14). The ALJ found that the claimant is a younger individual between 18 and 44 years old, with a GED (Tr. pp. 17). The ALJ concluded that a finding of "not disabled" was directed by Rule 202.21 of the Medical-Vocational Guidelines,

20 C.F.R. Part 404, Subpart P, Appendix II and, therefore, Harris was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on June 22, 2007 (Tr. pp. 17-18).

## Law and Analysis

### Issue No. 1 - Harris' Impairments

Harris contends the ALJ erred in failing to give proper consideration to all of Harris' severe, medically-determined impairments. Specifically, Harris contends the ALJ failed to include the syrinx at C5-C6, the syrinx at T8-T9, and the disc protrusion at L5-S1 on the right.

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989), citing Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985). The mere existence of pain is not an automatic ground for obtaining disability benefits. The factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).

A claimant's symptoms, including pain, will be determined to

diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §404.1529(c)(4). Subjective complaints of pain must be corroborated by objective medical evidence. Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2000). Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment. Chambliss, 269 F.3d at 522.

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5th Cir. 1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's decision on the severity of pain is entitled to considerable judicial deference. James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). Such a credibility determination is within the province of the ALJ. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991). Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints. Falco v. Shalala, 27 F.3d 162, 163-64 (5th Cir. 1994).

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Harris' case be REMANDED to the Commissioner for further proceedings.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 25th day of September, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE